# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| JAMES BYRD, JR., ) | |
| ) | |
| Defendant/Movant, ) | |
| ) | |
| v. ) | 1:02-cr-00287-KOB-JEO |
| ) | 1:04-cv-08044-KOB-JEO |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION**

James Byrd, Jr. (hereinafter "the defendant"), initiated the present action by filing a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. (Doc. 127).[1] He asserts that (1) his counsel was ineffective for failing to pursue a constitutional challenge to the "Project Safe Neighborhood" program; (2) his counsel was ineffective for failing to allow the defendant to testify; and, (3) his conspiracy conviction must be vacated because federal law precludes him from conspiring with government informants. (*Id*.). Premised on the arguments of the parties and the record, the court finds that the motion is due to be denied.

## **PROCEDURAL BACKGROUND**

The defendant was charged in a multi-count indictment with two other defendants in various drug counts. The first count alleges that the defendant and two co-defendants, James Waddell Byrd, Sr. (hereinafter "Byrd, Sr."), and Adrian Darnell Gilbert (hereinafter "Gilbert"), conspired to possess crack cocaine with the intent to distribute the same. The third count alleges that the defendant distributed crack cocaine in violation of federal law.[2]

---

[1] References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the court's record in this case.

[2] The defendant is not charged in the second count. It alleges a gun offense involving Byrd, Sr., and Gilbert.

Byrd, Sr., and Gilbert pleaded guilty and agreed to testify against the defendant at trial. Following a jury trial, the defendant was convicted on both counts. The court sentenced him, *inter alia*, to 210 months custody.

The defendant filed the present motion on December 27, 2004. ("Motion").[3] The United States has filed a response. ("Response").[4] The defendant also filed a traverse to the response of the United States. ("Reply").[5]

## DISCUSSION

### Procedural Default

The United States initially asserts that the defendant is not entitled to relief on his third claim, that the evidence is insufficient to support the conspiracy conviction because it was already raised on appeal or because it could have been raised. (Response at 6). The defendant retorts that the United States has misconstrued his claim. It is not a sufficiency of the evidence challenge, but a legal challenge asserting that the conviction is improper because he cannot conspire with an informant. (Reply at 2-3).

Supreme Court precedent is clear "that claims not raised previously at trial or on direct appeal although previously available, are barred by procedural default absent [a] showing of cause and actual prejudice." *United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). The Eleventh Circuit Court of Appeals similarly has stated:

> Generally speaking, an available challenge to a criminal conviction or

---

[3] The motion is located at document 127 in the criminal file. He filed a "Memorandum in Support of His Motion to Vacate." ("Memorandum" (Doc. 128)).

[4] The response is located at document 2 in the civil file (1:04-cv-08044-KOB-JEO).

[5] The reply is located at document 6 in the civil file.

> sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. *See Greene v. United States,* 880 F.2d 1299, 1305 (11th Cir. 1989) (and the cases cited therein), *cert. denied,* 494 U.S. 1018, 110 S. Ct. 1322, 108 L. Ed. 2d 498 (1990). A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development. *Compare United States v. Arango,* 853 F.2d 818, 823 (11th Cir. 1988) (an allegation of ineffective assistance of counsel must be raised by collateral attack as opposed to direct appeal because of the necessity to develop a factual basis for its validity through a hearing), *with United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir.) (claims of ineffective assistance may be considered on direct appeal where there is sufficient evidence on the record to resolve the issue), *cert. denied*, 505 U.S. 1210, ----, 112 S. Ct. 3008, 3048, 120 L. Ed. 2d 882, 915 (1992). When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error. *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir.), *cert. denied*, 498 U.S. 849, 111 S. Ct. 138, 112 L. Ed. 2d 105 (1990). Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397, 413 (1986). On the other hand, prior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding. *See United States v. Hobson*, 825 F.2d 364, 366 (11th Cir. 1987), *vacated on other grounds*, 492 U.S. 913, 109 S. Ct. 3233, 106 L. Ed. 2d 581 (1989).

*Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994), *cert*. *denied*, 514 U.S. 1112, 115 S. Ct. 1966, 131 L. Ed. 2d 856 (1995).

Even construing the defendant's claim as a challenge related to the status of the co-defendants, the United States is still correct in its assertion that the claim is procedurally barred from review. This substantive issue could have been raised on appeal, but was not. Therefore, it is barred from review absent a demonstration of cause and prejudice or a miscarriage of justice.

The defendant is correct in his assertion that he cannot be convicted of conspiring with a government informant. However, he has not demonstrated that situation in this case. To the

contrary, the indictment alleges that he conspired with his father, Byrd, Sr., and Gilbert from October 1, 2001, through November 20, 2001.  The evidence, particularly the testimony of Byrd, Sr., and Gilbert demonstrates that during this period, they were actively involved in the distribution of crack cocaine along with the defendant.  Specifically, the evidence shows that in early November 2001, the Calhoun County, Alabama, Drug Task Force began investigating the drug activities of Byrd, Sr.  (Tr. 41).[6]  The investigation proceeded through a series of undercover drug buys.  *Id*.  Agents obtained an arrest warrant for Byrd, Sr., and a search warrant for his residence in Anniston, Alabama.  *Id*. at 42.  Byrd, Sr., and Gilbert, along with several other individuals, were present in the residence when the search warrant was executed on November 20, 2001.  *Id*. at 43-44.  The defendant was not present as he had moved out of the residence sometime in 1999.  *Id*. at 43-44, 105.  Law enforcement officers recovered three separate parcels of crack cocaine, including some packaged in smaller bags that were ready for resale.  *Id.* at 44-49.  The total weight of the crack cocaine was 94.08 grams.  *Id*. at 74.

   Byrd, Sr., and Gilbert were arrested and subsequently began cooperating with investigators.  They pled guilty and testified at trial that the defendant was the organizer of the conspiracy.  Byrd, Sr., testified that Gilbert was his nephew and he came to Anniston to "do business" with the defendant.  He also stated that Gilbert used the residence to sell the cocaine that was supplied by the defendant.  *Id.* at 91-92.  Byrd, Sr., further testified that an ounce and a half to two ounces of crack cocaine, which was supplied by the defendant, was sold each day from his (Byrd, Sr.'s) residence during October and November 2001.  *Id*. at 99.

   Gilbert testified he moved from Ohio to Alabama to sell drugs for the defendant.  *Id*. at

---
[6]The trial transcript is located at document 122.

119-20.  According to the testimony, the defendant obtained the cocaine that was sold out of Byrd, Sr.'s house.  *Id*. at 121.  Gilbert testified that on one occasion, he went with the defendant to purchase cocaine from the defendant's supplier.  *Id*. at 123.  Gilbert stated that the defendant would break down his purchases into smaller packages for resale.  *Id*. at 125-26.  Gilbert testified that he sold drugs for the defendant, including the drugs that were found during the search of the residence on November 20, 2001.  *Id*. at 127.  He estimated that at least twenty purchasers would come by in a day.  *Id*. at 122.  He further stated that both the defendant and Byrd, Sr., would sell from the house.  *Id*. at 122-23.

Earl Kirby testified that he supplied crack cocaine to the defendant for resale.  *Id*. at 165-66.  Byrd approached Kirby about purchasing cocaine from him.  *Id*.  Kirby stated that the defendant purchased from him two to four times a week.  The defendant last purchased nine ounces shortly before Kirby's arrest in November 2001.  *Id.* at 167-68.

Bobby Ross, the defendant's uncle, testified that he purchased crack cocaine from the defendant during the summer of 2000.  *Id*. at 140-41.  He usually purchased a "quarter" or "eight-ball" from the defendant twice a week.  *Id*. at 138-39, 141.

The evidence further shows that on March 13, 2002, an undercover officer accompanied by an informant made a purchase of an "eight-ball" of cocaine from the defendant.  *Id.* at 212-18.  On October 13, 2002, an Anniston, Alabama police officer responded to a call of gunshots fired in the defendant's neighborhood.  *Id.* at 237-38.  As the officer approached the area, he observed a man carrying a shotgun.  The man walked onto the porch of a house and laid down the gun.  *Id.* at 237-38.  He was identified as the defendant.  *Id*. at 239.  Byrd was in possession of 36 small packets of marijuana and seven small rocks of cocaine at the time of his arrest.  *Id.* at 249, 252.

This testimony was admitted as evidence of the defendant's criminal intent on the charged offenses. *Id*. at 225-26.

The foregoing facts demonstrate that the defendant was properly convicted on the conspiracy charge in that, contrary to his assertions, he was not convicted of conspiring with government informants. He was convicted of conspiring with his father and Gilbert premised on their conduct before they became cooperating individuals. This finding is consistent with the holding of the Eleventh Circuit Court of Appeals that "the government presented ample evidence of a conspiracy" in this case. (Doc. 126, Opinion at 10).

**Ineffective Assistance of Counsel**

The defendant next alleges that his counsel was ineffective in failing "to compel the government to disclose and inform the jury about its discriminatory enforcement of 'Project Safe Neighborhood' agreement with the State of Alabama." (Motion at 4). Specifically, he asserts that the United States is selectively prosecuting African-Americans and "turn[ing] a majority of them into informants that are in turn misused or mismanaged to destroy the African-American family structure in Alabama." (*Id*.). In contravention of this assertion, the United States responds that "this case was not even prosecuted under the auspices of Project Safe Neighborhood. Movant was convicted of a drug conspiracy and of a substantive drug possession. For Movant to allege that his counsel was ineffective for failing to challenge Project Safe Neighborhood is ludicrous. Movant satisfies neither prong of the *Strickland* test, and this claim should be denied." (Response at 10).

The standard for reviewing claims of ineffective assistance of counsel is well-settled. It is as follows:

6

> The defendant must show that counsel's performance fell below constitutional standards and that his defense was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Ineffective assistance exists if: (1) counsel's performance was objectively unreasonable; and (2) a reasonable probability exists that the outcome would have been different absent the deficiency. *Id.* at 691, 104 S. Ct. at 2066. There is a strong presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Our review of an ineffective-assistance-of-counsel claim is from the perspective of defense counsel, and we consider the facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).

*Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001), *cert. denied*, 534 U.S. 1167, 122 S. Ct. 1185, 152 L. Ed. 2d 126 (2002).

Reviewing the present record under the foregoing standard, the court finds that this claim is without merit. The defendant has failed to demonstrate that counsel was ineffective in failing to raise this claim and he has failed to show that he was prejudiced as a result of counsel's conduct. The defendant's conclusory allegations are wholly insufficient under the circumstances before the court.

The defendant's last claim is another challenge to counsel's effectiveness. He asserts that counsel was ineffective in advising him not to testify at trial. He further states that when "counsel told the court to warn his client against testifying on his behalf," counsel "adviced [sic] the court adversely against" him. (Motion at 4). In discussing this allegation, the defendant argues as follows in his memorandum in support of the motion:

> The record shows that in his obvious collusion with the prosecutor to inhibit defendant from testifying on his behalf, counsel asked this court to warn the defendant against testifying on his own behalf, and . . . counsel barbarically advised this court adversely against defendant's constitutional right to testify on his behalf and to call favorable witnesses on his behalf. See (Trial Tr. pg. 232-233). Had the defendant and his mother been allowed to testify, they would have told the

>jury how Byrd, Sr., under the threat of killing the defendant and his mother, kidnapped him at the age of 14 from Chicago to subject him into child slave labor of selling drugs for him to support his expensive drug habit. There is a reasonable probability that the jury would have returned a favorable verdict.

(Memorandum at 9).

This claim is without merit for a number of reasons. First, it is not supported by the record. When this matter arose at trial, counsel informed the court that he had advised the defendant against testifying. (Tr. at 232). He further stated to the court that he recognized that the final decision was up to the defendant. *Id*. Counsel and the court then discussed whether any further inquiry by the court was necessary. *Id*. Following the close of the case by the United States, defense counsel told the court that the defendant informed him that he did not want to testify. *Id*. at 255. This was said and done in the defendant's presence. He did not indicate otherwise. Nothing counsel did prejudiced the defendant. To the contrary, counsel was insuring that the defendant made an informed decision about whether to testify. Thus, the defendant has failed to satisfy the first prong under *Strickland*.

Second, the defendant cannot demonstrate any prejudice. To the extent the defendant asserts that he would have offered testimony concerning his childhood, particularly events occurring about six years earlier, the court finds that they would not have been relevant to the present charges. Similarly, to the extent that the defendant asserts that he would have offered testimony from his mother about childhood events occurring many years earlier, they also would not have been relevant. Even if such testimony were permissible, the court fails to see how it would have impacted the jury's view of the substantial evidence presented at trial. Accordingly, he has failed to establish the second prong under *Strickland*.

**CONCLUSION**

In view of the foregoing, the defendant's motion to vacate his conviction and sentence (doc. 127) is due to be denied. An appropriate order will be entered.

**DONE**, this the 14th day of September, 2006.

                                                                  KARON OWEN BOWDRE
                                                                  UNITED STATES DISTRICT JUDGE